EXHIBIT
Patrick 8
SGP 1/25/05

MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION

| | |
|---|---|
| LAURA E. PATRICK,<br>    Complainant,<br><br>Vs.<br><br>JANSSON CORPORATION, TAYLOR<br>CORPORATION,<br>and ARLENE OSOFF,<br>    Respondents | DOCKET NO.02BEM02356<br><br><br>OCT 28 |

**COMPLAINANT'S RESPONSE TO RESPONDENTS' POSITION STATEMENT**

The Complainant Laura E. Patrick ("Ms. Patrick") hereby files the following response to the Respondents' Position Statement. As the Complainant has set forth a prima facie case of discrimination and there are significant genuine issues of material fact in dispute, the Commission should issue a pre-determination discovery order.

### *Ms. Patrick Vigorously Disputes Numerous Facts Alleged In The Respondent's Position Statement.*

The regulations of the Massachusetts Commission Against Discrimination, 804 C.M.R. 1.15(7) state that "disputes involving genuine issues of material fact are to be reserved for determination at hearing." Clearly, the present case involves disputes of genuine issues of material fact. The Complainant set forth with particularity in her Charge of Discrimination ("Charge") seven discriminatory statements made by Arlene Osoff on December 7, 2002 concerning Ms. Patrick's pregnancy and impending motherhood. (See Appendix A to Charge of Discrimination, ¶ 11). In their Position Statement, the Respondents categorically deny that Arlene Osoff made such statements.[1]

---

[1] Significantly, the Respondents further maintain that even if such statements were made that they do not rise to the level of hostile work environment or discrimination. Simply put, the Respondents are mistaken.

Accordingly, as there are genuine issues of material fact in dispute, a discovery order should issue.

Ms. Patrick further contends that the Respondent's Position Statement contains numerous inaccuracies. For example, at <u>no</u> time did Ms. Patrick request to change her position from an "exempt" position to a "non-exempt" position. (See attached Affidavit of Laura E. Patrick ("Patrick Aff.), ¶ 1). As the Design Development Manager, Ms. Patrick held a managerial professional position. (*Id.*) The Respondents erroneously suggest that in her four-day work week Ms. Patrick "would no longer be performing the full complement of duties related to her senior design position." (Respondent's Position Statement, p. 1). Instead, Ms. Patrick maintains that at all times she would be performing the full extent of her responsibilities and duties within her proposed four-day work schedule. (Appendix A to Charge, ¶ 8).

Additionally, the Respondents mistakenly contend that Ms. Patrick took two FMLA leaves in 2001 for fertility treatments. In fact, Ms. Patrick took only one planned FMLA leave from October to December, 2001 for a fertility treatment. (Patrick Aff., ¶ 2). Despite the Respondents' contention, Ms. Patrick did complete all necessary paperwork to establish that her FMLA leave was medically necessary. (*Id.*). Ms. Patrick did have emergency surgery the end of February beginning of March, 2001 and took vacation and sick leave for a brief time period. (*Id.*).

Despite the statements made in the Respondents' Position Statement, Ms. Osoff never told Ms. Patrick "that all managerial (and salaried) positions at Jansson have built into their salary structure an assumption of 5 to 7 hours of overtime." (Patrick Aff., ¶ 3).

---

By making such statements to Ms. Patrick, Ms. Osoff revealed her discriminatory animus. Ms. Osoff used this same discriminatory animus to cut arbitrarily Ms. Patrick's salary.

2

At no time did Ms. Patrick ask that her responsibilities be decreased. (Patrick Aff., ¶ 4). Jansson has no written policy concerning adjusting the wage rates for salary versus hourly employees. (Patrick Aff., ¶ 5). Nor does Jansson have written job descriptions for managerial employees such as Laura Patrick. (*Id.*).

### *The Respondents' Math Does Not Add Up.*

In defense of Ms. Patrick's Charge, the Respondents attempt to hide behind a so-called company policy of uniformly reducing the hourly wages of employees who transfer from full-time salaried employment to part-time hourly employment. Unfortunately for Jansson the math just does not add up. Jansson maintains that it has a policy of computing an employee's hourly wage upon transferring from a full time to part-time position by assuming a 44 hour work week. In Ms. Patrick's case, however, the Respondents are forced to admit that they did not merely assume the four hours of overtime to compute Ms. Patrick's hourly wage. Accordingly, the Respondents did not follow the avowed company policy. Instead, Jansson gained Ms. Patrick's hourly wage by taking Ms. Patrick's annual salary of $52,260, computing her hourly wage rate using 2080 hours annual (2080 represents 52 weeks X 44 hours per week), and arbitrarily rounding down the hourly rate of $22.84 to a rate of $22.50. Accordingly, the Respondents may not hide behind the company's policy because they did not follow the company's policy.

### *Respondents' So-Called Policy Disparately Impacts Females*

The Respondents' so-called policy of reducing employee's hourly wages disparately impacts female employees. As stated previously, Ms. Patrick denies that in requesting a four-day work week she would be relinquishing any of her duties or

3

responsibilities. Accordingly, fairness would dictate that her salary would be prorated downward from a five-day work week to a four-day work week. Ms. Patrick expected she would receive 4/5ths of her salary. In their defense, the Respondents set forth that there were five employees who transferred from "full-time salaried employment to part-time, hourly employment, or vice versa." First, only three of the five employees cited by the Respondents reduced their hours of work. Interestingly, all three are female employees. The Respondents maintain that the individual referred to as "N.L." received a reduced hourly wage because she assumed fewer responsibilities along with her part-time status. Ms. Patrick knows the identity of N.L. and believes that she was tasked with the exact same responsibilities before and after her reduced schedule. (Patrick Aff., ¶ 6.). With respect to the employees referred to as "W.C." and "A.R.", the Respondents fail to mention whether the responsibilities of these employees were reduced or stayed the same.

By setting forth the names of three female employees who received an hourly wage reduction upon reducing their schedule, the Respondents have furnished evidence that their so-called company policy disparately impacts female employees who more often than their male counterparts seek a reduced work schedule. The Complainant needs discovery to probe into pattern and practice of discrimination.

## Conclusion

For the foregoing reasons, the Commission should issue a pre-determination discovery order in this matter.

The Complainant,
By her Attorneys,

THERESA FINN DEVER
B.B.O. NO.: 564319
JOSEPH P. DEVER
B.B.O. NO: 564237
RILEY & DEVER, P.C.
Lynnfield Woods Office Park
210 Broadway, Suite 201
Lynnfield, MA 01940-2351
Telephone: (781) 581-9880

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand)
on 10/24/02

5

## AFFIDAVIT OF LAURA E. PATRICK

I, Laura E. Patrick hereby depose and state as follows:

1. At no time did I request to change my position from an "exempt" position to a "non-exempt" position. As the Design Development Manager, I held a managerial professional position.

2. The Respondents mistakenly contend that I took two FMLA leaves in 2001 for fertility treatments. In fact, I took only one planned FMLA leave in 2001 (October-December) for a fertility treatment. I did complete all necessary paperwork to establish that my FMLA leave was medically necessary. I did have emergency surgery in 2001 (February-March) and took vacation and sick leave for a brief time period.

3. Ms. Osoff never told me "that all managerial (and salaried) positions at Jansson have built into their salary structure an assumption of 5 to 7 hours of overtime."

4. At no time did I tell Ms. Osoff that I wanted to decrease my responsibilities.

5. Jansson has no written policy concerning adjusting the wage rates for salary versus hourly employees. Nor does Jansson have written job descriptions for managerial employees. In fact, I had no written job description.

6. I know the identity of the employee referred to as N.L. Upon reducing her schedule, N.L. was tasked with the exact same responsibilities she had before her reduction.

Signed under the pains and penalties of perjury, this 24th day of October 2002.

Laura E. Patrick