UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAURA E. PATRICK,<br>    Plaintiff,<br><br>vs.<br><br>JANSSON CORPORATION,<br>    Defendant | CIVIL ACTION NO.:04-10427-RGS |

**PLAINTIFF'S OPPOSITION TO DEFENDANT JANSSON CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

The Plaintiff Laura Patrick ("Patrick") hereby opposes the Defendant Jansson Corporation's Motion For Summary Judgment ("Defendant's Motion for Summary Judgment") and files the following memorandum in opposition. Plaintiff Patrick also files herewith her Opposition To Defendant Jansson's Statement of Undisputed Facts as well as the Affidavit of Laura Patrick and the Affidavit of Joseph P. Dever, Esq.

As grounds for her opposition, Plaintiff states that she has set forth sufficient evidence supporting her claim of a violation of Massachusetts General Laws Chapter 151B, and that there are material facts in dispute precluding summary judgment.[1] As

---

[1] Plaintiff Laura Patrick has filed a one count complaint against Defendant Jansson for a violation of Massachusetts General Laws Chapter 151B. While in her complaint, Laura Patrick refers to Defendant's conduct as violative of the Family and Medical Leave Act ("FMLA") (Complaint, ¶ 32), Plaintiff merely contends that Osoff's comments to Patrick stating that she would be training her replacement may also indicate Jansson's intent to violate the Family and Medical Leave Act. Plaintiff makes no separate claim pursuant to the Family and Medical Leave Act. Had the Defendant Jansson's counsel contact Plaintiff's counsel pursuant to the requirements of Local Rule 7.1(A)(2) of the Local Rules of the United States District Court for the District of Massachusetts, Plaintiff's counsel would have stipulated that there is no separate claim pursuant to the FMLA. Accordingly, Plaintiff does not address Part III(C) of Defendant's Memorandum Of Law In Support Of Motion For Summary Judgment.

further grounds for her opposition, Plaintiff states that Defendant Jansson's motion for summary judgment should be denied by Defendant failed to comply with Local Rule 7.1(A)(2) of the Local Rules of United States District Court for the District of Massachusetts requiring that counsel confer with opposing counsel in good faith in an attempt to resolve or narrow the issue and certify that it has so complied.

## Relevant Facts

Patrick began working at Jansson as a customer service representative in August of 1994. (Patrick, 59). In under a year, Patrick was promoted to the finishing manager. (Patrick, 59). Sometime in 1998, Patrick was promoted to the design development manager. (Patrick, 60). In December 2001, Patrick met with her supervisor Arlene Osoff to request a temporary accommodation during the first trimester of her pregnancy. (Patrick, 44). Patrick requested that she temporarily work a four-day week to ensure that she protect her pregnancy from a potential miscarriage as her pregnancy was considered high risk. (Patrick, 103). Patrick and Osoff had a discussion on December 3, 2001 and again on December 7, 2001. (Patrick, 44).

Patrick never told Osoff that she wanted to cut back from full-time employment to four days a week. Instead, she stated that she wanted to condense her work week into four days, estimating that she would likely work eight to ten hours per day. (Patrick, 26). Patrick never told Osoff that she wanted to take off on Mondays because of the traffic. (Patrick, 26). Patrick told Osoff that she wanted to step back from working Saturdays in the first trimester but would be "more than happy to come in an extra day in February" even though she would still be in her first trimester. (Patrick, 27). Patrick fully believed

2

she would be able to accomplish all of the tasks and responsibilities associated with her position as design development manager if she made efficient use of her time and was not pulled out of her position to do unrelated tasks. (Patrick, 28-34). Patrick never told Osoff that she was not prepared to continue her employment with Jansson if Jansson did not allow her to cut back to four days a week, not work on Mondays, not work on Saturdays, and not work any overtime. (Patrick, 39).

Osoff told Patrick that she would be receiving a pay cut. (Patrick, 47). Patrick told her that they needed to come to some kind of agreement. (Patrick, 47). Patrick explained that she did not think that the salary cut was fair because she would be performing the same job. (Patrick, 47). At that time, Osoff told Patrick that she would not be performing the same job as she would be training her own replacement and stepping down from her position. (Patrick, 48). Patrick stated that she did not understand why she would have to step down from her position. (Patrick, 48). Osoff explained that she would not be able to do the job being pregnant. (Patrick, 48). Osoff never told Patrick that she would be receiving a cut in her hourly pay rate as a result of decreased responsibilities. Instead, Osoff told Patrick that all hourly employees that come from salaried pay are adjusted the same way pursuant to company policy. (Patrick, 41-42). Nonetheless, there is no such policy in the employee handbook. (Patrick, 42-43).

Osoff had predetermined that Patrick would be unable to handle her job while she was pregnant and would not be able to handle the job when she returned from her pregnancy. (Patrick, 20). Osoff made a series of discriminatory comments to Patrick. She stated that Patrick may be unable to work because she would be feeling unwell during her pregnancy. (Patrick, 48). Patrick told her that that could not be determined.

3

(Patrick, 48). Patrick felt that this comment was discriminatory because Osoff was telling her that because she was pregnant she would not be able to do her job. (Patrick, 48). Osoff asked Patrick, "[w]hat are you going to do if you have more than one baby?" (Patrick, 50). Patrick replied that Osoff would be happy to know that there was only one child. (Patrick, 50). At that point, Osoff slammed her fist on the desk, reprimanded Patrick, and told her that she was being ungrateful for the "gift" Osoff had given her in allowing her to take FMLA leave. (Patrick, 50). Patrick explained that she did not believe that the FMLA leave was a gift but rather a company benefit. (Patrick, 51).

Osoff also told Patrick that she could not make a decision about coming back until she had her baby. (Patrick, 51). Patrick replied that it was her intention to return to her position after having the baby. (Patrick, 52). Osoff asked Patrick, "[w]hat's going to happen if you need to stay home with the baby when he or she is ill?" (Patrick, 53). Patrick replied that Osoff's question was not relevant to their discussion (Patrick, 53). Osoff further stated, "[w]ell let's face it. It's a man's world. The woman always stay home with the child." (Patrick, 53). Patrick believed Osoff's comment was discriminatory because Osoff's comments continued to focus on Patrick's pregnancy and how it was going to affect the way she worked or the possibility of not being able to come to work because she was going to be sick. (Patrick, 54). Osoff further asked Patrick, "[w]hy should I pay for another designer? Because if you didn't get pregnant, there was no need for me to hire another designer because you would be the designer." (Patrick, 55).

4

During their last conversation, on December 7, 2001, Osoff slammed her fist on the table, pointed her finger directly in Patrick's face and told her to leave the workplace. (Patrick, 21).

There is evidence in the record that other female employees of Jansson were adversely and disparately impacted as a result of the practice of cutting the hourly rate of employees moving from salaried to hourly positions. Anne Rascoe, a Jansson employee, was told that after she had a baby she came back to Jansson with reduced hours and was told that her pay scale was being adjusted because of the change in her responsibilities. (Patrick, 11, 13). However, she was tasked with the same responsibilities and felt that she was being treated unfairly. (Patrick, 13). Wendy Canty, another Jansson employee, returned to Jansson following the birth of her child and her salary was adjusted as she was purporting to be doing less responsibilities but she was actually doing the same tasks. (Patrick, 15). Patrick observed that Nicole Lee, another employee at Jansson who Jansson contends moved from a salaried to hourly position with a similar paycut was tasked with the exact same responsibilities after her reduction in salary as she had before her reduction in salary. (Patrick, 109-110). Patrick also observed that Lucia McDougall, another Jansson employee, who Jansson admits received a reduced hourly wage when she moved from a salaried to hourly position, was tasked with the same responsibilities after her reduction in salary. (Patrick, 115).

Joel Rudy, the current President of Jansson, stated that there was no actual policy at Jansson concerning cut an employee's pay when the employee moved from salaried to hourly employment. (Rudy, 48). Instead, it was merely his practice. (Rudy, 48). In fact, there is no written policy concerning such a pay cut at Jansson or Taylor. (Rudy, 50).

Rudy never spoke to Patrick about her request but relied entirely upon Osoff's version of her conversations with Patrick. (Rudy, 51-52). Patrick would not have been eligible for overtime if she worked more than 32 hours per week as Jansson's written overtime policy only provides for overtime when an employee works more than 40 hours per week. (Rudy, 54). All of the employees at Jansson who were offered part-time work at a reduced hourly rate were female. (Rudy, 56). Rudy also explained that there would be a variation in the manner that the hourly rate was cut if the employee was going to have reduced responsibilities. (Rudy, 57-58). Rudy stated that Osoff had told him that Patrick refused to be flexible and handle any emergency situations. (Rudy, 70).

Rudy admitted that he and Osoff had almost complete discretion concerning setting the hourly wage of employees of the company. (Rudy, 83). In fact, he stated that Osoff could have proposed any arrangement and he would have final approval over it. (Rudy, 83).

### Procedural History

In January 2004, Plaintiff Laura Patrick filed a one count complaint against Defendant Jansson Corporation in Essex Superior Court alleging pregnancy and gender discrimination in violation of Massachusetts General Laws Chapter 151B. Defendant Jansson removed the complaint to the federal court in the District of Massachusetts. Defendant Jansson now moves for summary judgment.

### Argument

### I. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), a party moving for summary judgment has the burden of establishing all material facts and demonstrating that it is

entitled to judgment as a matter of law. Summary judgment is only appropriate when viewing the evidence in the light most favorable to the non-moving party, all material facts have been established and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555 (1986).

In Massachusetts, "[s]ummary judgment is a disfavored remedy in the context of discrimination cases based upon disparate treatment." *Blare v. Husky Injection Molding Sys.Boston, Inc.*, 419 Mass. 437, 439 (1995). "Discrimination is usually a question of fact." *Id.* See also *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 572-573 (1985). "[T]rial courts should 'use restraint in granting summary judgment' where discriminatory animus is an issue.'" *DeNovellis v. Shalala*, 124 F. 3d 298, 306 (1st Cir. 1997) (citation omitted). See also , *Perez-Trujillo v. Volvo Car Corp. (Sweden)*, 137 F.3d 50, 54 (1st Cir. 1998) (court cannot resolve credibility issues at summary judgment). "At summary judgment the trial court must consider a defendant's alleged conduct both in context and in totality, not merely assess the respective allegations in isolation." *Simas v. First Citizens' Federal Credit Union*, 170 F.3d 37, 47 (1st Cir. 1999) (citations omitted). "'[The] court looks at the *combined effect* of the employer's actions to determine if there was discrimination.'" *Id* at 48, quoting, *Coffman v. Tracker Marine*, 141 F.3d 1241, 1246 (8th Cir. 1998) (emphasis original). In *Simas*, the First Circuit Court of Appeals explained that "otherwise minor slights" may become sufficiently adverse when viewed together. *Id.*

"With respect to summary judgment, it follows that, if a plaintiff has produced evidence sufficient to support a prima facie case of discrimination and has further offered evidence sufficient to support a determination either that the employer's reasons was a

pretext or that the actual reasons for the hiring decision was discriminatory, summary judgment for a defendant is inappropriate." *Blare v. Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 445 (1995).

II. **THIS COURT SHOULD DENY DEFENDANT JANSSON'S MOTION FOR SUMMARY JUDGMENT AS THERE ARE MATERIAL FACTS IN DISPUTE AND PLAINTIFF HAS MET HER BURDEN OF ESTABLISHING A PRIMA FACIE CASE OF EMPLOYMENT DISCRIMINATION AND REBUTTING DEFENDANT JANSSON'S BUSINESS DEFENSE.**

Patrick claims that Defendant Jansson violated Massachusetts General Laws Chapter 151B by unlawfully discriminating against her on the basis of her gender and pregnancy. A showing of discrimination under Massachusetts General Laws Chapter 151B may be made in two manners: disparate impact and disparate treatment. *Lynn Teachers Union, Local 1037 v. Massachusetts Comm'n Against Discrimination*, 406 Mass. 515, 526 (1990); *School Comm. Of Braintree v. Massachusetts Commn. Against Discrimination*, 377 Mass 424, 428-429 (1979). Patrick's claim is colorable under both a disparate impact and disparate treatment theory of employment discrimination. As Plaintiff Laura Patrick has put forth credible evidence supporting such theories of employment discrimination violative of Massachusetts General Laws Chapter 151B, this Court should deny Defendant Jansson's Motion For Summary Judgment.

    A. <u>As There Are Material Facts In Dispute And Laura Patrick Has Established Credible Evidence To Support Her Claim Of Employment Discrimination Pursuant To A Disparate Treatment Theory, This Court Should Deny Defendant Jansson's Summary Judgment Motion.</u>

To prevail on a claim of discrimination violative of Massachusetts General Laws Chapter 151B, a plaintiff first establish a prima facie case of discrimination. Namely, a plaintiff must show that he or she is a member of a protected class and is qualified to

8

perform the task at issue, but was subjected to an adverse employment decision. *Blare v. Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 440-441 (1995). In the next stage, the employer must articulate a nondiscriminatory reason for the adverse employment action, supported by credible evidence. *Id.* Next, the burden shifts back to the plaintiff to establish that the reason proferred by the employer is not the real reason but a pretext.

Plaintiff Laura Patrick has ably met the criteria establishing a prima facie case of employment discrimination by showing that (1) she was a member of a protected class based upon her gender and pregnancy in December 2001, and (2) she had exemplary job performance; (3) she suffered adverse employment actions upon announcing her pregnancy, and (4) she has established by credible evidence that the adverse actions were taken as a result of Arlene Osoff's discriminatory animus and not as a result of a legitimate nondiscriminatory business reason.

Moreover, Plaintiff has established that she has suffered at least three adverse employment actions. First, Patrick requested that she temporarily work a four-day week to ensure that she protect her pregnancy from a potential miscarriage as her pregnancy was considered high risk. After receiving Patrick's request for a four day work week, Osoff reluctantly agreed to the four day work week but told her that she would be demoted from her salaried managerial position to an hourly position, and, accordingly, receive a pay cut. Second, Osoff told Patrick that Osoff would hire another designer and that Patrick would be training her replacement. Third, Osoff actually unlawfully terminated Patrick during a discussion in which Patrick protested the pay cut and Osoff made numerous discriminatory comments.

9

In particular, Osoff's discriminatory comments reveal her bias and reliance upon sex stereotypes. "The Supreme Court has long recognized that unlawful discrimination can stem from stereotypes and other types of cognitive biases, as well as from conscious animus." *Thomas v. Eastman Kodak Company*, 183 F.3d at 59. In the instant case, there is ample evidence from Osoff of discriminatory remarks based upon sexual stereotyping. Osoff's remarks that Patrick would be unable to perform her job responsibilities while she was pregnant are clearly based upon sex stereotypes. Even more egregious are Osoff's remarks suggesting that Patrick would be unable to perform her job responsibilities after her baby was born because she would have to tend to the baby during times of illness as well as Osoff's suggestion that it is a "man's world." At least at the summary judgment stage, and arguably later at trial, this Court may draw the inference that Osoff's discriminatory remarks based upon sex stereotypes, influenced her decisions concerning Patrick's position, including her decision to hire a replacement for Patrick; her decision to cut Patrick's hourly wage; and her decision to terminate Patrick.

Defendant's argument that Plaintiff fails to show that she was constructively discharged are the terms and conditions of her employment were not "intolerable" is without merit. In *GTE Products Corporation v. Stewart*, 421 Mass. 22 (1995), the Supreme Judicial Court explained that a constructive discharge results where working conditions become so intolerable that a reasonable person in the employee's shoes would have felt compelled to resign. In *GTE Products Corporation*, the Supreme Judicial Court determined that the employee did not establish a constructive discharge where he did not face a "demotion, or a loss of job responsibilities or compensation." In the instant case, Patrick faced all three as she was told by Osoff that she would be training her

10

replacement as she would be unable to perform her job because of her pregnancy and eventual motherhood; she would be losing her managerial responsibilities and she was receiving an hourly pay cut for performing the same duties and responsibilities. Moreover, Plaintiff states that Arlene Osoff made numerous discriminatory statements to her calling into question her ability to perform her job in light of her pregnancy and eventual motherhood.

Despite the statements made in the Defendant's Statement of Undisputed Facts, Osoff never told Patrick that all managerial (and salaried) positions at Jansson have built into their salary structure an assumption of 5 to 7 hours of overtime or even 4 hours of overtime. (Patrick Affidavit, ¶4). At no time did Ms. Patrick ask that her responsibilities be decreased. (Patrick Affidavit, ¶ 2; Patrick Deposition, 28-34). Jansson has no written policy concerning adjusting the wage rates for salary versus hourly employees. Indeed, Joel Rudy testified in his deposition that he and Arlene Osoff retained sole discretion for determining employee compensation. Accordingly, as Osoff and Rudy had the discretion to determine Patrick's compensation, this Court may infer that Osoff's discriminatory animus played a role in her decision to cut Patrick's hourly rate.

Moreover, Jansson's practice of cutting the hourly salary of female employees who move from full time to part time employment yet perform the same duties and responsibilities is tantamount to unlawfully discriminating against a protected class. *See Thomas v. Eastman Kodak Company*, 183 F.3d 38, 58 (1st Cir. 1999) (one form of disparate treatment discrimination involves treating employees of one race less favorably than employees of another race who have performed equivalently). In the instant case, Jansson's practice discriminates against females who perform their full responsibilities to

11

the same extent as their male counterparts who work full time, but are penalized by receiving a reduced hourly wage.

As Patrick has satisfied her burden of establishing a prima facie case of gender discrimination in violation of Massachusetts General Laws Chapter 151B and provided ample evidence of Defendant's discriminatory animus to rebut any suggestion of a legitimate business defense, this Court should deny Jansson's motion for summary judgment.

**B. This Court Should Deny Defendant Jansson's Summary Judgment Motion As Plaintiff Laura Patrick Has Established Sufficient Evidence That Defendant Jansson's Practice Disparately Impacts Females.**

Plaintiff Laura Patrick further claims that Jansson's policy or practice of cutting the hourly rate of an employee who moves from a salaried to hourly position disparately impacts female employees at Jansson. Disparate impact cases involve "employment practices that are facially neutral in their treatment of different groups, but that in fact fall more harshly on one group than another." *School Comm. Of Braintree v. Massachusetts Commn. Against Discrimination*, 377 Mass. 424, 428 (1979). In that case, the Supreme Judicial Court recognized that Massachusetts General Laws Chapter 151B, §4, like Title VII of the Civil Rights Act of 1964 "'proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation.'" *Id.* at 429, n.10, quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853 (1971). In a disparate impact case, a plaintiff need not prove that the defendant had a discriminatory motive. Instead, the court determines whether the policy adversely impacts a protected class of persons. *Id.* at 428.

The Defendant's so-called practice of reducing employee's hourly wages disparately impacts female employees. Indeed, only females at Jansson have suffered adversely as a result of the Jansson practice. Additionally, there is evidence in the record that four other Jansson employees who moved from salaried to hourly positions to accommodate pregnancy and/or child rearing responsibilities also received reduced hourly wages although they were performing the same exact job responsibilities. Patrick denies that in requesting a four-day work week she would be relinquishing any of her duties or responsibilities. Indeed, she merely wanted to condense her work week from five days into four days. She would still perform all of the managerial duties involved in her design development manager position. There is ample evidence in the record that Jansson's so-called practice disparately impacts female employees who more often than their male counterparts seek a reduced work week as the evidence reveals that no males at Jansson have requested a move from full time to part time work.

As Patrick has produced sufficient evidence demonstrating that Jansson's practice of reducing an employee's hourly wage rate upon moving from a salaried to hourly position disparately impacts female employees, this Court should deny Defendant Jansson's motion for summary judgment.

## Conclusion

For the reasons set forth above, Plaintiff Laura Patrick hereby requests that this Court deny Defendant Jansson's Motion For Summary Judgment.

The Plaintiff,
By Her Attorneys,

*[signature]*

Theresa Finn Dever
B.B.O. NO.: 564319
Joseph P. Dever
B.B.O. NO.: 564237
RILEY & DEVER, P.C.
Lynnfield Woods Office Park
210 Broadway, Suite 101
Lynnfield, MA 01940-2351
Telephone: (781) 581-9880

Dated: 3/4/05

CERTIFICATE OF SERVICE

I, Theresa Finn Dever, attorney for the Plaintiff, hereby certify that a true copy of the above document was served upon the attorney of record for each other party by first class mail on March 4, 2005.

_____
THERESA FINN DEVER
3/4/05